IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LINDA MAE VANDERPOOL,

    Plaintiff,

v.                                                                                           No. 20-cv-0301 SMV

ANDREW SAUL,
**Commissioner of the Social Security Administration,**

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 21], filed on December 23, 2020. The Commissioner responded on February 17, 2021. [Doc. 23]. Plaintiff replied on March 17, 2021. [Doc. 24]. The parties have consented to my entering final judgment in this case. [Doc. 8]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the Administrative Law Judge's reasons for rejecting the more restrictive portions of Dr. Borrello's treating opinion and Dr. Baum's consultative opinion are not clear, especially in light of the record. Accordingly, the Motion will be granted, and the case will be remanded for further proceedings. *See* 42 U.S.C. § 405(g) (sentence four) (2018).

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were

applied.[1]  *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008).  If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  Courts must meticulously review the entire record but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner.  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Id.*  While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation marks omitted).

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481.  This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

## Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (2018); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) she is not engaged in "substantial gainful activity"; *and* (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) her impairment(s) either meet or equal one of the "Listings"[2] of presumptively disabling impairments; *or* (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If she cannot show that her impairment meets or equals a Listing, but she proves that she is unable to perform her "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering her residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

## Procedural Background

Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income on July 26, 2016. Tr. 15. She originally alleged an disability-onset date of December 31, 2008, and later amended it to July 26, 2013. Tr. 15, 287; *see* Tr. 37. Her claim was denied initially and on reconsideration. *Id.* Administrative Law Judge ("ALJ") Michael Leppala held a hearing on October 22, 2018, in Albuquerque, New Mexico. Tr. 15, 35. Plaintiff appeared in person with her attorney. Tr. 15, 35. The ALJ heard testimony from Plaintiff and an impartial vocational expert ("VE"), Thomas A. Grenier, who appeared by telephone. Tr. 36.

The ALJ issued his unfavorable decision on March 6, 2019. Tr. 26. He found that Plaintiff met the insured status requirements through December 31, 2013. Tr. 18. At step one, he found that Plaintiff had not engaged in substantial gainful activity since July 26, 2013, the amended alleged onset date. *Id.* At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disk disease, degenerative joint disease, anxiety, and depression. *Id.* At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 18–20. Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 20–23. The ALJ found that Plaintiff had:

> the [RFC] to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except [Plaintiff] is capable of occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying ten pounds, standing and/or walking for about six hours in an eight-hour workday, and sitting for about six hours in an eight-hour workday, all with normal breaks. She is further limited to frequently climbing ramps or stairs, occasionally climbing ladders, ropes, or scaffolds, occasionally stooping, and frequently kneeling, crouching, and crawling. [Plaintiff] can understand, carry out, and remember simple instructions and make commensurate work-related decisions, respond appropriately to supervision,

coworkers, and work situations, deal with routine changes in work setting, maintain concentration, persistence, and pace for up to and including two hours at a time, with normal breaks throughout a normal workday.

Tr. 20.

At step four, the ALJ found that Plaintiff could not return to her past relevant work as a customer service representative, assistant director and director of education, kindergarten teacher, or elementary teacher. Tr. 24. Accordingly, the ALJ proceeded to step five. Tr. 24–25. The ALJ considered Plaintiff's RFC, age, education, work experience, and the testimony of the VE. *Id.* He found that Plaintiff could perform the duties of collator operator, marker, cutter and paster of press clippings, tube operator, and addresser. Tr. 25. He further found that such jobs existed in significant numbers in the national economy, and therefore, Plaintiff was not disabled. *Id.* The Appeals Council denied review on February 3, 2020. Tr. 1–3. Plaintiff timely filed the instant action on April 3, 2020. [Doc. 1].

## Discussion

Plaintiff argues that the ALJ erred in weighing the opinions of her treating psychologist Marissa Borrello, Psy.D., and the consultative examiner Steven K. Baum, Psy.D. The Court agrees. The Court cannot follow the ALJ's reasons for rejecting the more restrictive portions of Dr. Borrello's and Dr. Baum's opinions.

### Standards for Weighing Treating and Consultative Opinions

Social Security regulations require that, in determining disability, the opinions of treating physicians be given controlling weight when those opinions are well-supported by the medical

evidence and are consistent with the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[3] This is known as the "treating physician rule." *Langley*, 373 F.3d at 1119. The idea is that a treating physician provides a "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations," and therefore, a treating physician's opinion merits controlling weight. *Doyal*, 331 F.3d at 762.

To receive controlling weight, a treating physician opinion must be both supported by medical evidence and consistent with the record. If not, the opinion may not merit controlling weight but still must be given deference and weighed using the following six regulatory factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); *see* 20 C.F.R. §§ 404.1527(c), 416.927(c). However, not every factor is applicable in every case, nor should all six factors be seen as absolutely necessary. What is absolutely necessary, though, is that the ALJ give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight she ultimately assigns to the opinion. *Langley*, 373 F.3d at 1119; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Branum v. Barnhart*, 385 F.3d 1268, 1275 (10th Cir. 2004).

---

[3] This regulation applies to Plaintiff's case because she filed her claim for benefits prior to March 27, 2017. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017).

In sum, when properly rejecting a treating physician's opinion, an ALJ must follow two phases. First, the ALJ must find that the opinion is not supported by medical evidence and/or is inconsistent with the record. Second, the ALJ must still give deference to the opinion and weigh it according to the factors listed above. Like all findings, an ALJ's findings in these two phases must be supported by substantial evidence.

The opinion of a one-time consultative examiner is entitled to less deference than a treating opinion. Effectively, the ALJ applies only phase two. In other words, when reviewing the opinion of a one-time consultative examiner, the ALJ applies the regulatory factors listed above. As with treating opinions, there is no requirement to apply every factor, but the Court must be able to follow the ALJ's reasoning. *See, e.g., Langley*, 373 F.3d at 1119.

The ALJ erred in weighing the opinion of<br>treating psychologist, Dr. Borrello.

In this case, Plaintiff's treating physician, Marissa Borrello, Psy.D., drafted a letter and completed a form describing Plaintiff's mental status and functional limitations. Tr. 605, 607–08, 621–22 (duplicate). On October 9, 2018, Dr. Borrello explained that she had seen Plaintiff four times over the previous six months. She diagnosed Plaintiff with panic disorder as well as anxiety and depressive disorder related to a medical condition. Tr. 605. She explained that Plaintiff's mental problems had been ongoing for several years and seemed to have a "bidirectional relationship" with her physical ailments. *Id.*

Dr. Borrello assessed limitations in Plaintiff's understanding and memory. Tr. 608. She explained that Plaintiff's "[a]nxiety and pain symptoms negatively impact memory" and that Plaintiff had been reporting "increasing moments of difficulty with recollection." *Id.* For those

7

reasons, she opined moderate limitations in Plaintiff's ability to remember locations and work-like procedures and in her ability to understand and remember detailed instructions. *Id.*

Dr. Borrello further assessed limitations in Plaintiff's ability to sustain concentration and persist. *Id.* She explained that "[a]nxiety and pain have impacted [Plaintiff's] ability to maintain focus due to having to consistently shift and readjust to address pain. Coping with pain and current stressors have been at the forefront of her cognition [and] leading to rumination issues." *Id.* Thus, Dr. Borrello assessed marked limitations in the ability to:

> maintain attention and concentration for extended periods of time (i.e. 2-hour segments);
>
> complete a normal workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

Tr. 607. Further, she assessed moderate limitations in the ability to:

> carry out detailed instructions;
>
> perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; and
>
> sustain an ordinary routine without special supervision.

*Id.*

Dr. Borrello also assessed limitations in social interaction. Tr. 608. She found a moderate limitation in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. She explained that "[d]ue to consistently readjusting, others may be distracted. Current level of stress/anxiety have [sic] lowered [Plaintiff's] frustration tolerance." Dr. Borrello assessed a moderate limitation in the ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. She explained that "[d]ue to pain,

8

[Plaintiff] currently showers once every two weeks and has difficulty wearing various types of clothing. She is limited in the types of tasks she can perform." *Id.* The doctor assessed moderate limitations in the ability to respond appropriately to changes in the workplace and the ability to set realistic goals or make plans independently of others. Dr. Borrello assessed a marked limitation in the ability to travel in unfamiliar places or use public transportation. The doctor explained that "due to chronic pain and unexpected flare-ups, [Plaintiff] experiences difficulty adhering to strict plans and cannot travel much or use public transportation." Tr. 608. Lastly, Dr. Borrello noted "depression [and] anxiety related to pain [and] life change" were additional significant mental limitations, and she noted that Plaintiff "experiences frequent panic attacks (up to 4 times a day) [and has obsessive-compulsive-disorder] symptoms around contamination due to health issues." *Id.*

Rather than giving it controlling weight, the ALJ gave "some weight" to Dr. Borrello's opinion, because it was "based on a very brief treating relationship." Tr. 23. Further, the ALJ repeated the marked limitations assessed by Dr. Borrello and concluded, "[a]fter reviewing the medical evidence, I find no basis for any marked limitations." *Id.* The ALJ made no other findings regarding Dr. Borrello's opinion or the weight accorded to it.

Plaintiff challenges the ALJ's weighing of Dr. Borrello's opinion. [Doc. 21] at 13–16. The Court agrees that the ALJ erred. It is clear that the ALJ rejected the more restrictive portions of Dr. Borrello's opinion, but the Court cannot follow his reasoning. First, the ALJ stated that he found no basis in the record for any marked limitations. But there was evidence of marked limitations in the record: namely, the opinion of consultative psychological examiner Dr. Baum, which explicitly contained marked limitations. Tr. 568–71, 615–19 (duplicate). Certainly, the

ALJ was free to reject all or portions of Dr. Borrello's opinion, but he was required to explain why he did so. The Court cannot follow the ALJ's reason when, in fact, the record contained explicit evidence of marked limitations.

The only other explanation offered by the ALJ for not giving controlling weight to Dr. Borrello's opinion is the length of time Dr. Borrello had been seeing Plaintiff: four visits over a six-month period. Tr. 605. The ALJ determined that it was "a very brief treating relationship." Tr. 23. And on that basis, he rejected the more restrictive portions of Dr. Borrello's opinion. This is not a legitimate reason. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (finding reversible error where the ALJ rejected a treating opinion solely because the provider had seen the claimant for only two months). The only two providers who examined Plaintiff agreed that she suffered limitations more restrictive than the RFC assessment. So, it does not follow that the opinion one of those two providers, Dr. Borrello, would merit less weight based on a short treatment relationship; no provider had a longer treatment relationship.[4] Further, the rejected portions of Dr. Borrello's opinion were not inconsistent with the doctor's noted explanations or with the evidence of record.[5] Under these circumstances, the Court cannot follow the ALJ's reasons for rejecting the more restrictive portions of Dr. Borrello's opinion.

Defendant's arguments are not convincing. Defendant argues that "much" of Dr. Borrello's opinion is reflected in the RFC. [Doc. 23] at 8. The implication being that Plaintiff was not prejudiced by the ALJ's rejection of portions of the opinion. The Court disagrees. For example, the ALJ's RFC assessment included the ability to "maintain concentration, persistence,

---

[4] In fact, there is no other psychological opinion that the ALJ found more persuasive than Dr. Borrello's. He rejected the opinions of the non-examining agency consultants. Tr. 23.

[5] Or at least the ALJ did not find them inconsistent, and no inconsistency is readily apparent.

and pace for up to and including two hours at a time." Tr. 20. Dr. Borrello, however, assessed a marked limitation in the ability to maintain attention and concentration for two-hour segments. Tr. 607, 621 (duplicate). Plaintiff was prejudiced by the ALJ's error in weighing Dr. Borrello's opinion.

Defendant further argues that there are no treatment notes in the record from Dr. Borrello, [Doc. 23] at 10, but that is not the reason given by the ALJ. *See* Tr. 23. This Court's review is "limited to the reasons stated in the ALJ's decision." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008). Because the Court cannot follow the ALJ's reasons for rejecting the more restrictive portions of Dr. Borrello's opinion, remand is warranted.

<u>The ALJ erred in weighing the opinion of
consultative psychological examiner, Dr. Baum.</u>

Dr. Baum performed a consultative examination of Plaintiff on September 28, 2018. Tr. 563–71, 611–19 (duplicate). Dr. Baum reviewed Plaintiff's medical records and spoke with her mother. Tr. 563. He spent an hour performing a clinical interview of Plaintiff and an additional three hours performing psychometric tests. *Id.* He then completed a written report and gave his opinion as to Plaintiff's functional limitations. Tr. 563–71, 611–19 (duplicate). He noted that Plaintiff and her daughter live with Plaintiff's mother, who cooks and drives for them. Tr. 563–64. Dr. Baum believed Plaintiff's prognosis to be poor. In part, he explained:

> There is fairly consistent agreement by clinicians, the claimant and the claimant's mother for the following diagnoses: anxiety, depression, insomnia and pain.[] By contrast, this is the first time that the claimant admits to being psychotic—a condition that occurs when stressors e.g., pain, exceed emotional balance rendering coping skills ineffective—see MMPI results and Readings p. 4). Her shifts into psychosis occur when she is stressed. She believes the onset of [sic] began in 2013 triggered by "menopause" and the

11

> demise of her brother. I suspect that her onset date occurred earlier based on
> 1) seeking treatment in 2008–2012 for "mood dysthymic affect" by El Pueblo psychiatrist DeYapp-Romero
> 2) increased psychiatric symptoms requiring her and child to move into her mother's home (2011)
>
> This is a woman who can barely function at home with limited responsibility and a mother who takes care of her and her daughter. I would suspect that she would fare considerably worse in the average workplace environment.

Tr. 564.

The ALJ gave "some weight" to Dr. Baum's opinion, rejecting the more restrictive portions. Tr. 23. He explained that he was according only some weight to Dr. Baum's opinion because Dr. Baum saw Plaintiff only once, and because Dr. Baum had accorded "undue deference to [Plaintiff]'s self-reported symptoms." *Id.* This is the entirety of the ALJ's explanation for why he rejected the more restrictive portions of Dr. Baum's opinion.

Plaintiff challenges the ALJ's reasoning for rejecting the more restrictive portions of Dr. Baum's opinion. [Doc. 21] at 17–19. In the context of this case, the Court agrees with Plaintiff. The Court cannot follow the ALJ's reasoning. First, the ALJ discounted Dr. Baum's opinion on the ground that Dr. Baum accorded undue weight to Plaintiff's self-reported symptoms. Tr. 23. But the Court does not follow how the ALJ so concluded. Dr. Baum's report includes psychometric testing, review of medical records, an interview with Plaintiff's mother, and many of his findings are explicitly attributed to these sources, not simply Plaintiff's self-reported symptoms. Tr. 563–71, 611–19 (duplicate). The ALJ does not identify any particular portion of the opinion that was unduly based on Plaintiff's self-reported symptoms, nor is any apparent to the Court. The ALJ made no other finding that sheds light on his reasoning. The ALJ specifically

mentioned the portion of Dr. Baum's report that describes Plaintiff's mother's caring for Plaintiff and Plaintiff's daughter, Tr. 23, and there is no finding, for example, that Plaintiff's mother does not care for Plaintiff. Nor is there any finding that Plaintiff performs more activities of daily living that Dr. Baum presumed. There is no readily apparent inconsistency between Dr. Baum's report and evidence of record, and the ALJ identified none. Accordingly, the Court cannot follow the ALJ's reasons for rejecting the more restrictive portions of Dr. Baum's opinion.

### Conclusion

Considering the entire record, the Court finds that the ALJ's reasons for rejecting the more restrictive portions of Dr. Borrello's and Dr. Baum's opinions are not clear and, as such, not susceptible to meaningful review. Remand is warranted.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 21] be **GRANTED**. The Commissioner's final decision is reversed, and this case is remanded for further proceedings in accordance with this opinion. *See* § 405(g) (sentence four).

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**